The deficiency, like the water rents, would be payable by general taxation. Whether, therefore, the tax should be for water rents to increase the sinking fund from year to year, or to pay deficiency, would make no difference to the city or the general taxpayers, nor to the individual water consumers.

I conclude, therefore, that the park board could not be required to pay water rents. But, if they could, I do not think the remedy could be properly applied of turning off the water. The supply of water to the city for public purposes was a public necessity, and should not be interfered with. If the park board or other city officials would not perform a duty imposed upon them by law to pay over to the water board the water rents, the remedy would very likely be by mandamus, on the application of any one having an interest therein, to compel the performance of such official duty, as we held in the City of Corning Case above referred to.

No costs need be allowed. All concur; ROBSON, J., on the last ground stated in the opinion only.

---

CHAFFEE v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1910.)

1. MASTER AND SERVANT (§ 285*)—ACTION FOR INJURIES—QUESTION FOR JURY.
   Where a locomotive was started forward while the fireman was attempting to alight therefrom, and he was thrown against the tender, and, to prevent himself from falling, reached for a grab iron, which should have been attached within reach, at the corner of the locomotive, whether the absence of the grab iron was the proximate cause of the injury, in falling under the wheels of the tender, was for the jury.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1016; Dec. Dig. § 285.*]

2. MASTER AND SERVANT (§ 105*)—INJURIES TO SERVANT—CUSTOMARY APPLIANCES.
   That a railroad company uses an iron strap locomotive step, instead of a box step commonly used on other railroads, is not negligence, in the absence of a showing that the strap step was unsafe.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 185–191; Dec. Dig. § 105.*]

3. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—APPLIANCES—STEPS ON LOCOMOTIVES—INSTRUCTIONS.
   Where plaintiff, a locomotive fireman, alleged that the steps of the locomotive were "defectively, unsafely, and unsuitably constructed," but the evidence failed to show that there was any defect in the steps themselves, or that the accident was due to the character of the steps, evidence that the accident might not have happened if a handhold above the steps had been provided, did not warrant an instruction on defendant's negligence in using the steps.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1151; Dec. Dig. § 293.*]

4. APPEAL AND ERROR (§ 1169*)—GROUND FOR REVERSAL—ERRONEOUS INSTRUCTION.
   Where the verdict is general, and the jury were permitted through an erroneous instruction to base their verdict solely upon an improper ground,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the verdict was not otherwise so clearly supported that a direction thereof by the court could be upheld, the judgment founded thereon will be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4531–4539; Dec. Dig. § 1169.*]

Appeal from Trial Term, Steuben County.

Action by Mahlon A. Chaffee against the Erie Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

F. A. Robbins, for appellant.
Herbert A. Heminway, for respondent.

ROBSON, J. Plaintiff has been awarded in this action damages for personal injuries suffered by him shortly after midnight, on June 26, 1909; he being then a fireman on one of defendant's locomotives. On attempting to alight from his locomotive, he fell, and a wheel of the rear truck of the tender crushed one of his legs. The case was submitted for the jury's decision as the ordinary common-law action in negligence.

From the evidence the jury could have found that the train, of which plaintiff's locomotive was a part, had stopped at a place where, in the ordinary operation of the train, the locomotive was to be, and was in fact, uncoupled from the train; that a part of his work as fireman could be done only while standing on the ground and at the side of the locomotive; that this was a proper time and place to do this work; that then intending to do this work he started to alight from the left side of the locomotive in the usual way, stepping backward from the end of the narrow gangway, or opening, between the locomotive proper and the tender, to the step attached below; that he had placed his foot on the step, and while grasping with his right hand a long rod, or grab iron, fixed perpendicularly at the corner of the tender, above and slightly back of the steps, and intended to serve the purpose for which plaintiff then used it, and steadying himself by placing his left hand on a board, or plank, bolted to the outside corner of the locomotive proper, at that instant the locomotive was without warning suddenly and violently started forward, so that he was thrown around against the tender; that as this occurred he reached out with his left hand for a handhold, or grab iron, an appliance which should have been fixed within reach of his hand at the corner of the locomotive proper; that there was no grab iron there, and nothing serving, or designed to serve, its purpose, a fact of which he was excusably ignorant; that, being unable to retain his hold on the grab iron with his right hand, he fell and was injured as already described.

Our examination of the evidence leads to the conclusion that defendant's failure to supply some suitable grab iron, or handhold, fixed on or near the corner of the locomotive, within reach of a person using the steps in getting off or on the locomotive, would, if found

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the jury as a fact, present a fair question for the jury to pass upon whether this omission was negligence of the defendant to which this accident was due, and without which it would not have happened. This question was properly and clearly submitted to the jury; and, except for the fact that they were also permitted, erroneously as we conceive, to consider another fact as a separate ground upon which they might find defendant's negligence established, we should not disturb the result of the verdict. One assignment of negligence of defendant found in the complaint was that the steps to which we have referred were "defectively, unsafely, and unsuitably constructed." The learned trial court, in submitting to the jury the question whether defendant had performed its duty as master to furnish plaintiff a reasonably safe locomotive to work upon said:

> "Now upon that question, gentlemen, whether or not these steps were proper is for you to say. You have heard the evidence here that upon the New York Central and upon the Pennsylvania and the Lehigh Valley and Lackawanna they furnish box steps, but that it has for many years been the custom of the Erie to furnish these stirrup steps for the engines, and there has never been a previous accident."

The effect of this charge, taken in connection with the statements preceding it and the court's disposition of defendant's requests to charge, was clearly an instruction of the jury that negligence of defendant might be predicated solely upon a determination that defendant had not supplied this locomotive with proper steps. The steps in question are of a kind designated in the testimony as ladder, stirrup, or skeleton strap steps. Such steps are made of flat, or strap, iron an inch and a half or inch and three-quarters wide. They are attached to the corner of the frame of the tender and extend vertically downwards. The sides and lower step are formed of one piece of iron bent in stirrup shape, the step at right angles with the sides. The upper step, made of similar iron, is fixed to the sides, above and parallel with the lower step. The two steps are placed relatively like the rungs of a ladder. There was no defect in the steps themselves, if it was reasonably safe to use steps so constructed. They were of a type for many years in general use by defendant on its locomotives; and it appears, as the court instructed the jury, that no accident had ever theretofore resulted from their use. The steps in question were strong, and were securely attached in the proper position. It appears that a different kind of steps is used on other railroads, known as box steps. These have a back and treads of wood. But it does not appear that experience has demonstrated that they are safer or more practical in actual use than the stirrup step. The ladder step is not obviously dangerous for the use designed; for defendant's long and continued use of steps of similar construction had demonstrated that it was adequate, safe, and convenient. Under such circumstances defendant could not justly be charged with negligence because it continued to use them. Bennett v. Long Island R. R. Co., 163 N. Y. 1, 5, 57 N. E. 79; Sweeney v. Berlin & Jones Envelope Co., 101 N. Y. 520, 5 N. E. 358, 54 Am. Rep. 722.

Neither does plaintiff's account of the accident disclose that his fall from the locomotive was due in any way to the fact that the steps were of the ladder, and not the box, type. He had, as he says, in the act of descending, placed at least one foot apparently securely on the steps before the sudden starting of the engine, which made him lose his balance on the step. How his foot left the step, or what directly caused it to leave it, he is unable to say. He does not say that it slipped on the tread of the step on which he had placed it, or between the steps themselves. It does not appear that a back to the steps would have afforded him further protection; for, at most, that would have prevented his foot from slipping forward through the steps. There was no charge that the steps themselves were so smooth that they were slippery and dangerous for that reason. It is not apparent that a wooden step, even with a somewhat wider tread, would, in plaintiff's emergency, have proved an added factor of safety. If plaintiff's version as to how the accident occurred is to be accepted as true, we are brought back to the fact that it was due not to any defect in the steps, but, if in any way attributable to defendant's negligence, it was solely because there was no handhold, or grab iron, on the engine within his reach when he lost his balance on the step by the sudden starting of the engine.

Respondent's counsel ingeniously suggests that the submission, as bearing upon defendant's negligence, of the question whether the steps were proper and reasonably safe for the use for which they were intended, may be sustained because they were intended for use in connection with grab irons, or handholds, at each side, and that with the grab irons they formed the means, or combination, supplied by defendant for getting on and off the locomotive. But it does not seem that was the effect of the charge, or that the jury could have so understood it. Confessedly a proper and safe grab iron was on the tank. It would not be seriously urged that it would not be error to submit to the jury, as a separate ground upon which they might find defendant guilty of negligence, the question whether that grab iron was a safe and proper one, because they might find it was part of a combination, faulty in some other particular. We are unable to say that the jury, under the charge of the court, may not have found defendant negligent because the step was unsafe, and that the plaintiff would not have slipped, or fallen, if some other kind of step had been supplied. The verdict was a general one, and the jury having been erroneously permitted to predicate their verdict solely upon the ground that the step was defective, and the verdict not being otherwise so clearly supported that a direction thereof by the court could be upheld, reversal of the judgment and order necessarily follows. Baldwin et al. v. Burrows et al., 47 N. Y. 199.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur.